IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:19-CV-195-FL

| | |
|---|---|
| SANDRA HEWETT BROOKS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DAVID STANLEY, individually and in )<br>his capacity as the Director of Brunswick )<br>County Health and Human services; )<br>CATHY LYTCH, individually and in her )<br>capacity as the Director of Brunswick )<br>County Department of Social Services; and )<br>PATRICIA MYERS, individually and in )<br>her capacity as the Adult Services )<br>Supervisor for the Brunswick County )<br>Department of Social Services, )<br>)<br>Defendants. ) | ORDER |

This matter comes before the court on defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 8). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendant's motion is granted as to plaintiff's claims arising under federal law and denied as moot in remaining part where the court declines to exercise jurisdiction over plaintiff's pendent state law claims.

## STATEMENT OF THE CASE

Plaintiff commenced the instant action on October 2, 2019, alleging claims under federal law for violation of her Fifth and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1983 and 1986, and claims under state law for unfair and deceptive trade practices, N.C. Gen. Stat. 75-1.1

et. seq., and negligent supervision. Defendants filed the instant motion to dismiss on January 6, 2020, arguing that each of plaintiff's claims are time-barred by applicable statutes of limitations, that plaintiff fails to state a claim with respect to each of her causes of action.

## STATEMENT OF FACTS

In 2013, plaintiff, a black female, served on the Brunswick County Senior Alliance ("BCSA") with defendant Patricia Myers ("Myers"), Brunswick County's supervisor of Adult Day Care Services, and Lori Alderfer ("Alderfer"), BCSA's Adult Day Care Consultant. (Compl. ¶¶ 11, 13, 15). While plaintiff was serving with defendant Myers and Alderfer on the BCSA, members of the BCSA agreed that Brunswick County needed a community-based service that provided social and health services for adults needing supervised care during the day, also known as an Adult Day Healthcare Center ("ADHC"). (Id. ¶ 17). In 2014, plaintiff informed BCSA members of her interest in opening an ADHC facility in Brunswick County. (Id.). Almost immediately, defendants Myers and Cathy Lytch ("Lytch"), director of Brunswick County Department of Social Services, opposed plaintiff's ownership of an ADHC. (Id.).

Prior to plaintiff opening Oceanic Infinite Care ("Oceanic"), her ADHC, Brunswick County routinely provided an experienced consultant to assist individuals in opening an ADHC. (Id. ¶¶ 8, 18). The consultant was reFsponsible for assisting ADHC administrators with a range of tasks, such as training, technical assistance, consultation services, program compliance with state and federal regulations, contract development, administration and monitoring, other duties. (Id. ¶¶ 18–20). These functions were critical to the successful development, implementation, and long-term sustainability of Oceanic. (Id. ¶ 20). However, shortly after plaintiff expressed her desire to open an ADHC, defendants Myers and Lytch replaced Alderfer, an experienced ADHC consultant, with Mary Windham ("Windham"), a novice ADHC consultant. (Id. ¶ 21).

2

At the point when defendants Lytch and Myers assigned Windham to act as plaintiff's ADHC consultant, Windham lacked both the requisite work experience and training to competently perform her duties. (Id.). During plaintiff's first consultation with Windham, plaintiff discovered that defendant Myers issued to Windham an outdated Adult Day Care policies and procedures manual. (Id. ¶ 22). Defendant Myers never provided Windham with an updated manual; in fact, plaintiff gave Windham the name of the website where Windham eventually downloaded an updated version of the manual. (Id.). Realizing that Windham was ill-equipped as an ADHC program consultant, plaintiff request program consultations with defendants on several occasions, but those requests were ignored. (Id. ¶ 23).

Plaintiff alleges that defendants Lytch and Myers intentionally participated in unlawful race discrimination by failing to provide plaintiff with the same level of consultative services as enjoyed by similarly situated white providers during the development phase of their respective programs. (Id.). Some Brunswick County Department of Social Services caseworkers informed plaintiff that they overheard defendant Myers making racially disparaging comments denouncing the opening of an ADHC by a black owner, like plaintiff. (Id. ¶ 24). Defendants also allegedly engaged in various other misconduct. (Id. ¶ 25).

Finally, plaintiff alleges that defendants purposefully withheld federal Title VI and Title XX funds from Oceanic by deliberately and repeatedly using the wrong federal eligibility requirements to reduce client eligibility for Oceanic's services. (Id. ¶ 35). Defendants knowingly chose to use the stricter program eligibility requirements found in the Home and Community Grant Program, despite Title XX program consultants directing defendants to use the specific eligibility requirements articulated under Title XX. (Id.). Due to defendant's use of the wrong eligibility requirements, plaintiff and Oceanic lost contracts and revenue from numerous program eligible

senior adults, which led to the closing and dissolution of Oceanic. (Id.).

Plaintiff alleges that her claims arose on or about July 16, 2015. (Id. ¶ 1). Three years later, plaintiff filed her first action against defendants, alleging the same claims. Brooks v. Stanley et al, No. 7:18-CV-128-BO, DE 1 (E.D.N.C. July 16, 2018). A few months later, plaintiff voluntarily dismissed her claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(a)(i). Brooks v. Stanley et al, No. 7:18-CV-128-BO, DE 6 (E.D.N.C. Oct. 3, 2018).

## COURT'S DISCUSSION

A.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In reviewing a motion to dismiss under Rule 12(b)(6), the court "may properly take judicial notice of matters of public record." Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted). Additionally, the court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Id. (internal citations omitted).

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant

4

through an affirmative defense, see Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). "[A] motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011). Dismissal under Rule 12(b)(6) based on affirmative defenses "is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Id.; Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996).

B.  Analysis

   1.   42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Jenkins v. Medford, 119 F.3d 1156, 1159–60 (4th Cir. 1997) (en banc). Plaintiff alleges that defendants violated her right to equal protection and her right to due process.

      a.   Equal Protection

The Fourteenth Amendment prevents any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (internal quotation marks and alteration omitted). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of

5

intentional or purposeful discrimination." King v. Rubenstein, 825 F.3d 206, 220 (4th Cir. 2016) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)); Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 825 (4th Cir. 1995). "[I]f a plaintiff has met this burden, then 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" Sansotta v. Town of Nags Head, 724 F.3d 533, 542 (4th Cir. 2013) (quoting Morrison, 239 F.3d at 654).

Plaintiff fails to allege sufficient facts from which the court can reasonably infer she was subjected to unlawful race discrimination. She fails to plausibly allege she is similarly situated to white service providers that received experienced program consultants and benefitted from notification letters to every CAP/DA client. (See id. ¶ 25). She also fails to allege that any remaining misconduct, such as applying the eligibility requirements for the Home and Community Grant program to prospective clients, was applied solely to her and not white service providers. (See id. ¶ 35). As plaintiff fails to allege disparate treatment on account of her race, she fails to state a claim for equal protection.

      b.     Due Process

The Fourteenth Amendment also provides that "[n]o State shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. "In order to state a claim for a violation of due process, a plaintiff must allege sufficient facts to support a finding that the [plaintiff was] deprived of life, liberty, or property, by governmental action." Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 79 (4th Cir. 2016) (internal quotations and citations omitted). "The Fourteenth Amendment does not create a property interest itself, rather the property interest must be created or defined by an independent source." Id. (internal quotations and citations omitted). "Constitutionally protected property

6

interests are necessarily vested, as it is only upon vesting that a property interest becomes the sort of 'legitimate claim of entitlement' that the Fourteenth Amendment protects." Siena Corp. v. Mayor & City Council of Rockville Maryland, 873 F.3d 456, 462 (4th Cir. 2017).  A welfare applicant's legitimate claim to entitlement to benefits under federal, state, or local law may create a property interest.  See, e.g., Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Rockville Cars, LLC v. City of Rockville, Maryland, 891 F.3d 141, 146 (4th Cir. 2018); Mallette v. Arlington Cty. Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 632 (4th Cir. 1996).

Plaintiff alleges that defendants applied the wrong program eligibility requirements to "program eligible" senior adults.  (Compl. ¶ 35).  Plaintiff further alleges that once denied, "program eligible" senior adults could not appeal defendants' decision or reapply for the program. (Id.). While defendants plausibly may have deprived program eligible adults of a property interest without due process,[1] plaintiff fails to allege she possessed a vested property interest in contracts with program eligible adults.  Indeed, the absence of a contract indicates that plaintiff did not have a vested interest in the program eligible adults' business.  (See id.).  By extension, plaintiff does not plausibly allege a property interest in funding based on the number of clients served by Oceanic.  Therefore, plaintiff fails to state a claim for violation of her due process rights.

c. Statute of Limitations

Claims brought under 42 U.S.C. § 1983 are "governed by appropriate 'laws of the United States,' but if such laws are unsuitable or inadequate, state-law rules are borrowed unless a particular state rule is 'inconsistent with the Constitution and laws of the United States.'" Chardon

---

[1] Because plaintiff has made no allegations that plausibly show she has a "close" relationship with those prospective clients and there is a hinderance to prospective clients suing to protect their own due process rights, plaintiff lacks standing to assert the due process rights of her prospective clients.  See **Error! Main Document Only.**Kowalski v. Tesmer, 543 U.S. 125, 130 (2004); **Error! Main Document Only.**Warth v. Seldin, 422 U.S. 490, 499 (1975).

7

v. Fumero Soto, 462 U.S. 650, 655–56 (1983) (quoting 42 U.S.C. § 1988). Importantly, § 1983 "do[es] not provide for a specific statute of limitations, establish rules regarding the tolling of the limitations period, or prescribe the effect of tolling." Id. at 655. Accordingly, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 249–50 (1989). Likewise, the court borrows applicable tolling rules provided under state law. Hardin v. Straub, 490 U.S. 536, 539 (1989); Bd. of Regents of Univ. of State of N. Y. v. Tomanio, 446 U.S. 478, 485–86 (1980).

Under North Carolina law, the statute of limitations is three years "for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." N.C. Gen. Stat. § 1-52(5). This statute of limitations applies to all § 1983 claims. Owens, 488 U.S. at 248 n.9; Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 66–67 (4th Cir. 2015). North Carolina law also recognizes a tolling exception known as the "savings clause" for voluntary dismissals under the North Carolina Rules of Civil Procedure. See Bockweg v. Anderson, 328 N.C. 436, 438, 450 (1991) (holding that, in instances where federal courts have occasion to apply North Carolina law, the savings clause should be applied to voluntary dismissal without prejudice from federal court). In pertinent part, the rule provides "[i]f an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal." N.C. Gen. Stat. § 1A-1, Rule 41(a)(1).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law" but instead is "governed by federal rules conforming in general to common-law tort principles." Wallace v. Kato, 549 U.S. 384, 388 (2007) (emphasis in original).

8

A § 1983 claim is presumed to accrue once plaintiff has "a complete or present cause of action," that is when "the plaintiff can file suit and obtain relief." Id. (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)). Usually, this means "[a] civil rights claim accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" A Soc'y Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). However, if "practical considerations" dictate that "a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." McDonough v. Smith, 139 S. Ct. 2149, 2155, 2161 (2019) (holding a claim of wrongful conviction based upon fabricated evidence accrues when the wrongful conviction is overturned); Wallace, 549 U.S. at 389, 391 (holding a claim of wrongful detention accrues when the detention ceases to be wrongful).

Plaintiff alleges that in 2014, she expressed her interest in opening Oceanic to members of BCSA, which defendants Lytch and Myers "almost immediately" opposed. (Compl. ¶ 17). "Shortly after" plaintiff expressed her desire to open Oceanic in 2014, defendants Lytch and Myers replaced Alderfer with Windham, an ADHC program consultant that allegedly lacked the work experience and training necessary to competently assist plaintiff in developing Oceanic. (Id. ¶¶ 17, 21). Likewise, plaintiff alleges that "in 2014" the defendants agreed to erect artificial barriers to plaintiff's opening and operation of Oceanic. (Id. ¶ 48). Plaintiff fails to allege any facts from which the court can reasonably infer the legal conclusion that her § 1983 claims accrued on or about July 16, 2015. (Id. ¶ 1). Accepting the facts alleged as true, plaintiff's § 1983 claims accrued in 2017.[2] Thus, the statute of limitations for filing plaintiff's § 1983 claims expired in 2017. To

---

[2] Plaintiff's responsive brief indicates that defendants' alleged conduct occurred from March 2014 to July 2015. (Pl. Resp. (DE 16) at 5, 8). Plaintiff also attaches email correspondence, showing payments made to Oceanic from June 22, 2015, to July 9, 2015. (Email Correspondence (DE 17) at 1–2). However, the court does not consider such assertions of fact in ruling on a motion to dismiss. See Trimble Navigation Ltd., 484 F.3d at 705.

9

infer that plaintiff's original action was timely filed on July 16, 2018, is speculative. As plaintiff fails to allege facts from which the court may plausibly infer her original action was "commenced within the time prescribed therefor," N.C.R. Civ. P. 41(a)(1), plaintiff may not toll the statute of limitations for her § 1983 claim using the savings clause.

Plaintiff first argues that the "standard rule" for accrual of her claims does not apply, arguing that her claims deserve "distinctive treatment." (Pl. Resp. (DE 16) at 11–12). Plaintiff cites the Supreme Court's holding in Wallace, analogizes her claims to the North Carolina UDTPA statute, and asserts that the applicable statute of limitations in this case should be four years. (Pl. Resp. (DE 16) at 12–13). Plaintiff's argument is unpersuasive for several reasons. First, plaintiff's interpretation of Wallace confuses accrual, when a limitations period begins, with the appropriate limitations period. As discussed above, the limitations period for all § 1983 claims in North Carolina is three years. Owens, 488 U.S. at 248 n.9; Tommy Davis Const., 807 F.3d at 66–67. Second, the UDTPA is "a hybrid statute, providing a remedy for an entirely statutory cause of action." Marshall v. Miller, 302 N.C. 539, 546–47 (1981). As UDPTA claims are not based on traditional principles of common law, they are not a persuasive analogue to plaintiff's § 1983 claim for purposes of determining accrual. See id. Third, even if UDTPA claims were a proper analog, such claims accrue when "the right to institute and maintain a suit arises." Barbee v. Atl. Marine Sales & Serv., Inc., 115 N.C. App. 641, 649 (1994) (quoting Motor Lines v. General Motors Corp., 258 N.C. 323, 325 (1962)). Where plaintiff's § 1983 claims are not analogous to those that "may not realistically be brought while a violation is ongoing," they are not entitled to distinctive treatment for purposes of accrual. McDonough, 139 S. Ct. at 2155.

Plaintiff also argues that her § 1983 claims constitute a continuing violation, focusing specifically on the allegation that defendants continuously withheld funds by deliberately and

repeatedly using the wrong federal eligibility requirements to reduce client eligibility for Oceanic's services. (Pl. Resp. (DE 16) at 13–14).

"The tort principle of 'continuing violation,' which also has been referred to as 'continuing harm' or 'continuing wrong,' is not unique to Section 1983 jurisprudence, but is a general principle of federal common law." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). "To establish a continuing violation . . . the plaintiff must establish that the unconstitutional or illegal act was a . . . fixed and continuing practice." Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991). "[I]f the plaintiff can show that the illegal act did not occur just once, but rather 'in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'" A Soc'y Without A Name, 655 F.3d at 348 (quoting Nat'l Advert. Co., 947 F.2d at 1167). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Nat'l Advert. Co., 947 F.2d at 1166 (quotations omitted).

Even assuming the facts as true that defendants applied the wrong eligibility criteria several times, (see compl. ¶ 35), plaintiff fails to allege that defendants applied said criteria to disqualify prospective clients on or after July 16, 2015. Moreover, deliberately applying the wrong eligibility criteria is not the "same alleged violation" as the panoply of other alleged violations by defendants, including providing Windham as a program consultant. (See Compl. ¶ 25). Thus, the continuing violation doctrine, absent further factual enhancement, cannot save plaintiff's complaint.

Finally, plaintiff argues that her claims are subject to a four-year statute of limitations because her individual capacity claims are brought against defendants under 42 U.S.C. § 1981. (Pl. Resp. (DE 16) 15–17). Plaintiff's argument is unpersuasive, where her complaint simply does not allege a claim under § 1981. Plaintiff's § 1983 claims against defendants are dismissed without

11

prejudice.

 2. 42 U.S.C. § 1986

"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do," may be subjected to civil liability. 42 U.S.C. § 1986. However, "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." Id. As discussed more fully above, plaintiff's claims accrued well over a year prior to her filing her original complaint on July 16, 2018. Where plaintiff's conclusory allegation that her claims accrued on July 16, 2015, is futile, the court dismisses plaintiff's § 1986 claims with prejudice.

 3. State Law Claims

Having determined that plaintiff's claims under 42 U.S.C. §§ 1983 and 1986 fail under Rule 12(b)(6), only plaintiff's state law claims remain. Where jurisdiction in this matter is based upon federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367, it is appropriate to consider whether continued exercise of jurisdiction over plaintiff's state law claims is warranted. See Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1), 12(h)(3)).

"A district court may decline to exercise supplemental jurisdiction over a pendent state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Where the court has dismissed all claims over which it has original jurisdiction, it declines

to exercise supplemental jurisdiction over plaintiff's remaining state law claims. Plaintiff's state law claims are dismissed without prejudice for lack of subject matter jurisdiction. Defendants' motion to dismiss the same for failure to state a claim is denied as moot.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 8) is GRANTED IN PART and DENIED IN REMAINING PART AS MOOT. Plaintiff's § 1986 claim is DISMISSED WITH PREJUDICE. Plaintiff's § 1983, UDTPA, and negligent supervision claims are DISMISSED WITHOUT PREJUDICE. Within 21 days, plaintiff is ALLOWED to file motion to amend, together with proposed amended complaint, correcting the deficiencies noted herein. Should plaintiff fail so to file, the clerk is DIRECTED to close this case without further order from the court.

SO ORDERED, this the 12th day of May, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge